[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 546 
The appellants raise the question whether the New York Central Railroad Company, or the directors of it, had authority or power to make a stock dividend, which should increase the dividends for the year beyond ten per centum of the capital stock, or which should operate to reduce the capital stock. (1 R.S., p. 601, § 2.) In Currie v. White (45 N.Y., 822), we declined to pass upon a similar question, because we could, without that, decide all that was necessarily involved in that case. It is the same here. Whatever the character and effect of the instruments or certificates issued by the directors of the New York Central Railroad Company to its stockholders, it does not appear that any stockholder, or other person interested, has successfully questioned the validity of them, or that the State, through its law officers, has made inquiry into the existence of the power to make them. If any inquiry should be made in this case, into that question, it would be important to consider the effect of the act of 1869 (Laws of 1869, chap. 918, p. 2404), in conjunction with the facts, that the testator lived after the passage of that act, and had retained the certificates issued to him, and had received payment of dividends declared thereon. Without determining the influence of the act above cited, it is of importance in the case that these certificates were received by the testator in his lifetime, and retained by him; and that he received and retained dividends made upon them, as well as upon his shares of stock. Whether valid or invalid, he made no dissent to them; they entered into the bulk of *Page 548 
his personal estate, and became a part of the assets of his estate at his death. Whatever effect they had upon the shares of stock to which they were assigned, that effect took place in his lifetime, and while he owned them, with full power of disposition of both or either, together or separately; and whether the shares were or were not lessened in value by the issuing of the certificates. As the shares were at the time of his death, impaired or unimpaired in value, he made a bequest of them. His legatee of them took them as they then were. His will, and the codicils to it, speak from that time. It is a general rule, that a will speaks from the time of the death of the testator. This rule is not excepted from, in the case of a general bequest of a particular description, as of an ascertained number of shares of a particular stock. (See Robinson v. Addison, 2 Beav., 515.) It is to be observed, that he did not bequeath to her any specific share, definitely described by numbers or otherwise. Had he died without owning any shares of the stock of the New York Central Railroad Company, the legacy to his widow would not have been adeemed, and it could have been made good, by the purchase and transfer to her of any shares, to the number given, to be had in the market. Had they been bought in the market, the ownership by her for life would have conferred upon her such rights and interests as belonged or were incident to the shares at that time, and not those which had at some prior time belonged to them, but had been taken away. And it is not different if, to satisfy the legacy, the executors make use of shares found among the assets of the testator. It follows, then, that when the testator died, leaving this will and its codicils, by which his widow was entitled to a legacy for life, of a certain number of shares of stock, she took them just as they were at his death. If, by the illegality of the acts of the directors of the company, the stock in her hands is not to be affected by these certificates, and would be worth more to her if the certificates were declared void, her controversy is with the company, if it refuse to admit and act upon her claim, and to allow to her *Page 549 
that greater value in a greater dividend to her, or otherwise. Her controversy is not with these respondents, to have delivered to her, as her own, these alleged void and illegal instruments, which, upon her own theory, would be waste paper in her hands. If they are illegal they cannot be added to her bequest to the increase of it. They can only be declared illegal, and only as a consequence of such declaration, her shares of stock become more valuable. If those acts were legal, then the certificates having been issued to the testator, and received by him, and having become a part of his personal estate, as an independent part thereof (as we shall show further on), were the subject of a separate and independent testamentary disposition, and if they have been thus disposed of, they must go as is the intention of the will. It is not contended that they are specifically bequeathed to the appellant; nor is it claimed that if they do not belong to her as attached to or accessories of the shares of stock, but that they pass by the residuary clauses of the will. We think it clear that the certificates did not become attached to the shares of stock. If dividends, as they are held to be by the United States Supreme Court, in Bailey, Collector, v. NewYork Central Railroad Company, the opinion in which case is before us in manuscript, then, as dividends, they belonged to the stockholder owning the shares upon which they were paid; paid to be sure as something growing out of his stock, but instantly when paid, separable from and independent of it, as much so as though paid in money and appearing in his assets as a deposit to his credit in his bank account. If not dividends, but an optional agreement to pay the amount expressed, or to convert into other shares of stock, then by their terms they are transferable by the holder, and by their terms, and by the necessary legal effect of them, an independent thing of value, not a part of the stock, nor in any ways attached thereto, or accompanying it. In either view, a person becoming the holder of the original shares of stock of the New York Central Railroad Company, subsequent to the issuing of the scrip certificates to the prior holder of such stock, *Page 550 
acquired no right or interest in them, and can make no claim therefor upon him who, by primary issue or subsequent transfer, has obtained them.
For the same reason it is not necessary for us to pass upon another question raised by the appellants, to wit, whether extraordinary cash dividends or stock dividends go as capital, or as his own as income, to the holder for life of original shares of the capital. Such question can only arise where such dividend is made after the tenant for life has come into the possession and enjoyment of the shares bequeathed, or at least where the right to possession and enjoyment has accrued. Where the dividend has taken place during the lifetime of the testator, and has been accepted and received by him, there can be no question to whom it then belonged; and the question to whom it belongs after the testator's death, is to be determined alone by the terms in which he has made testamentary disposition of his estate and of the avails of such dividend as a part of his estate. And where he has bequeathed shares of capital stock, as such, no dividends thereon declared and received by him in his lifetime pass to the legatee of stock, as attached or as accessory thereto. If the testator in this case had made just the bequest he did make of these shares of capital stock, and had also, in express terms, made bequest to a different legatee of these certificates, can there be any doubt but that if they are valid instruments, they would have passed to that legatee? And if not valid instruments, the bequest of them, though it would not have been of value to the legatee, would equally have separated them from the shares of stock as they now are. This is the very distinction taken in Johnson v. Johnson
(5 Eng. L. and Eq., 164), where the vice-chancellor says: I am not clear whether they are such income as the widow is entitled to; for they may have accrued before the death of the testator, and therefore may form part of his estate.
It is claimed, however, by the appellant, that where intermediate the declaring of a dividend, and the day fixed for the payment of it, there has been a transfer of the stock, the *Page 551 
dividends pass by the transfer with the stock, and are payable of right to the transferee; and Clive v. Clive (Kay, 600);Burroughs v. The North Carolina Railroad Company
(67 N. Car., 376), and other cases are cited by the appellant to that point; and it is further urged, that by the terms of these certificates, the amount named in them is payable out of future earnings; earnings to which the life-tenant is entitled as owner of the shares of stock. But this view takes in but a part of the transaction as expressed in the certificates and as it existed in fact. To each of them was attached the resolution of the board of directors under which it was issued, and by reference thereto in the certificate, the resolution was made a part of the certificate. By that resolution it was declared that the certificate was issued in consequence of the expenditure by the company in the past of the past earnings of the road in construction, equipment, the purchase of real and other property. So that it was the past earnings of the road that these certificates represented, which had been devoted to the increase of its value, above the amount expressed by its original capital stock. And what is a fact of much importance in passing upon this question, these certificates were made assignable by their terms, capable of transfer to a holder upon the books of the company; so that from the moment they were received from the company they might be sold, pledged, assigned, and thus became an independent and transferable part of personal estate of the owner. (And seeDe Gendre v. Kent, 4 Eng. Eq. Cas. [L.R.], 283, and cases there cited, in one of which Clive v. Clive, supra, is distinguished and limited.) Whatever may be the result, when a dividend is declared payable at a future day to the holders of stock on that day, a circumstance upon which stress is laid in 67 North Carolina (supra), it cannot but be that a disposable right and interest in the dividend is created in the holder of the stock on the day when it is declared, when, by the terms in which it is declared, he is given the power of disposal, and is promised that his transfer shall be recognized and affirmed by the company. Nor, indeed, is it to be questioned but that, *Page 552 
without such power given by the resolution of directors declaring a dividend, the vendor of shares of stock may so contract with the vendee, as to exclude declared dividends not yet payable, from the effect of the sale and transfer. The conduct of the company and of the testator in this case show that such was the purpose of these certificates, and such the dealing with them; so that we do not think that this case is affected by the fact that these certificates might be redeemed out of future earnings of the company, inasmuch as that is controlled by other facts in the case. We have examined all the cases with which the learning of the appellants' counsel has enabled him to furnish us. In nearly all of them the stock or other dividend which was the subject of contention was declared after the death of the testator, or the creation of the trust fund. In Clive v. Clive (supra) it was not so, but that case was decided upon the particular terms of the articles under which the company was formed. (See Wright
v. Tuckett, 1 Johns. Hem., 266.)
The other question raised by the notice of appeal to this court is as to the allowance by the General Term of costs in favor of the respondents, against the appellants. The respondents succeeded at General Term; the case was one of equity jurisdiction, and the costs were in the discretion of the court. We see no ground for disturbing the judgment below in this respect.
The judgment appealed from should be affirmed, with costs.
All concur.
Judgment affirmed. *Page 553