## MISSOURI BAPTIST SANITARIUM, Appellant, v. McCUNE, Respondent.

**St. Louis Court of Appeals, May 2, 1905.**

1. **WILLS: Shares of Stock: Dividends.** A specific bequest of shares of corporate stock entitles the legatee to the dividends declared after the death of the testator, whether such dividends accrued before or after the death.

2. ———: ———: ———: **Proceeds of Sale.** But a provision in a will directing the sale of certain shares of corporate stock and the payment of the proceeds to a legatee does not entitle the legatee to the dividends declared before the sale; it is not a bequest of the stock, but the bequest of the proceeds and the stock and the dividends are the property of the estate until the sale.

3. ———: **Construction: Intention.** The intention of the testator is the controlling principle in the construction of wills in this State. (Section 4650, Revised Statutes 1899.)

4. ———: ———: ———: **Surrounding Circumstances.** The intention of the testator must be gathered from the will itself unless inconsistencies and ambiguities in the language make the intention doubtful; in that case, a resort to surrounding circumstances is allowed in order to arrive at the true intention.

5. ———: ———: ———: **Terms of the Will.** A direction in a will that certain shares of corporate stock be sold to the highest bidder and the proceeds divided into two equal parts and paid over to two separate legatees, is a plain unambiguous direction requiring no resort to matters *aliunde*; it is a bequest of the proceeds of the sale and not of the stock.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

(1) The court in construing a will, of the different items thereof, should give it such a construction that the property therein bequeathed would go to the parties

that testatrix wanted and intended it should go. Briant v. Garrison, 150 Mo. 655, 52 S. W. 361; Garth v. Garth, 139 Mo. 456, 465, 41 S. W. 238; Walton v. Drumtra, 152 Mo. 489, 54 S. W. 233; McMillan v. Farrow, 141 Mo. 55, 41 S. W. 890; Cross v. Hoch, 149 Mo. 325, 50 S. W. 786; Thomas v. Thomas, 149 Mo. 426, 51 S. W. 111. (2) It is a reasonable construction of the will that the testatrix intended to bequeath this bank stock as a trust fund to the two institutions named in her will, and simply directed that her executor sell the same to the very best advantage possible that it might be the more easily divided, and the institutions realize the greater amount in a consequence thereof. And, such a bequest carries with it any interest or dividends, which might have accrued up to her death and also between the time of her death and the sale of the stock. Page on Wills, sec. 499, p. 587; Fleming v. Carr, 47 N. J. Eq. 449; Kent v. Tapley, 11 J. U. R. 940; Gibbon v. Gibbon, 13, C. B. 205; Sheffield v. Parker, 158 Mass. 330.

*Ball & Sparrow* for respondent.

The will of testatrix is absolutely clear. Anyone can understand what her intentions were; she said she owned stock in the Mercantile Bank to the amount of six thousand dollars; she directed that the stock be sold to the highest bidder and the proceeds of the sale be divided equally between the "St. Louis Baptist Sanitarium" and the "Orphans' Home;" therefore the authorities cited by appellant have no application to this case. The intention of the testatrix, of course, is to be gathered from the whole instrument. McMillan v. Farrow, 141 Mo. 55, 41 S. W. 890.

### STATEMENT.

This proceeding originated in the probate court of Pike county. The appellant, a legatee under the will

of Amelia Tinsley, deceased, filed its exceptions in the probate court to the final settlement of A. J. McCune, executor of the last will of Mrs. Tinsley, who died testate in said county June, 1901. The will, a portion of which only is material to this controversy, and is hereinafter set out, provided among other things that certain bank stock owned by the testatrix to the amount of $6,000, should be sold by her executor and the proceeds of such sale be divided equally between the St. Louis Baptist Sanitarium and the Orphans' Home, both of which were under the supervision of the Baptist Church. Mr. McCune, the executor, collected $720 dividends declared on stock and turned the said dividends into the general fund of the estate, of which his wife and he were residuary legatees. After having collected the $720 dividends arising out of the bank stock, he disposed of the bank stock on September 30, 1902, at a premium of $610 and on July 7, 1903, paid over to the Baptist Sanitarium $3,420.64, which amount was one-half of the amount for which he sold the bank stock, including premiums and interest on the same at six per cent from the date of the appraisement of such bank stock to the date of sale, Sept. 30, 1902. These facts appearing in the final settlement of the executor, the Baptist Sanitarium, appellant herein, filed its exceptions to such final settlement in the probate court, praying said court to disapprove such final settlement for the reason that the executor had not accounted to appellant for one-half of the dividends collected on said bank stock and prayed the court for an order on the executor to pay appellant the sum of $360 with interest thereon at six per cent from the date the executor collected the dividends. The exceptions were disallowed by the probate court. Appellant appealed therefrom to the circuit court of Pike county. Upon such appeal, all of the facts herein above stated were shown in the circuit court by the will, its probate, inventory and appraisment of the estate, receipts for disburse-

ments and final settlements, together with other records of the probate court in that behalf pertinent to the issue, which will and records show that A. J. McCune was nominated executor by the provisions of said will; that the will was probated June 17, 1901, and immediately thereafter he qualified as such executor and letters testamentary were granted him thereon; that among other things inventoried as parcel of said estate, were sixty shares of stock in the Mercantile Bank at Louisiana, Missouri. So much of the will as is pertinent to this controversy is as follows:

"Item 2. I own stock in the Mercantile Bank of the city of Louisiana, county of Pike, and State of Missouri, to the amount of six thousand dollars, which I desire shall be sold to the highest bidder and the proceeds of such sale be divided into two equal parts which are to be disposed of in the following manner:

"I direct that one af these equal parts be set apart by my executor and paid over by him to the proper officers or persons representing the St. Louis Baptist Sanitarium, an institution located in the city of St. Louis, Missouri, and under the supervision of the Baptist Church or denomination of Christians. The other equal part I desire shall be set apart and paid over by my executor to the proper officers or managers in charge of the Orphans' Home, another charitable institution also located in the said city of St. Louis, Missouri, and also under the charge, supervision, and control of the said Baptist Church or denomination.

"These sums respectively are to be held, managed and used by the respective boards having in charge and under their control the said institutions, in the manner best calculated to keep up and maintain the same for the uses and purposes for which they have been established."

NORTONI, J. (after stating the facts).—Appellant argues that under item two of the will, a bequest of the bank stock was made to it and the Orphans' Home and that such bequest carried with it the dividends also, therefore, one-half of the dividends which were collected by the executor and turned by him into the corpus of the estate should be awarded to the Baptist Sanitarium, together with interest thereon since the date of their collection. This no doubt would be true under appellant's assumption that item two of the will is a bequest of the bank stock. There is no doubt of the law in such case. "The general rule stated in the briefest way is that a dividend belongs to the one who is the owner of the stock at the time when the dividend is actually declared, irrespective of the time when it is earned, although it may be made payable at a future date." [Thompson on Pri. Corp., sec. 2172; Price v. Milling Co., 83 Mo. App. 477; Houser v. Richardson, 90 Mo. App. 142; Rose v. Barclay, 45 L. R. A. 319.] "Under the foregoing principles, a specific legatee of corporate shares is entitled to all dividends which are declared after the death of the testator." [Thompson on Pri. Corp., sec. 2206; Cook on Corp., sec. 539; Wright v. Warren, 4 De Gex Rep. 367; Browne v. Collins, 12 Eq. 586; Ibotson v. Elam, 1 Eq. 186; Jaques v. Chamber, 2 Collyer 435.] "A transfer of stock passes, of course, all dividends declared subsequently to the transfer, although the dividend was earned before the transfer was made. ........ A legatee of shares takes the stock as it was at the time of the testator's death. All dividends declared previous to that event go to the administrator." [Cook on Corp., sec. 539; Brundage v. Brundage, 60 N. Y. 544, 12 Ct. App. Rep. 934; In re Kernochen et al., 104 N. Y. 618; Johnson v. Bridgwater Iron Mfg. Co., 80 Mass. 274, 14 Gray 274.] "An unconditional bequest of the dividends of stock is a bequest of the stock itself. But a bequest of a specific sum to be paid from stock does not bequeath the stock itself, al-

though amounting to a charge upon it." [Cook on Corp., sec. 305; Wilson v. Maddison, 2 Y. & C. Ch. 372.] Indeed the law is well settled to the effect that he who owns stock at the time the dividends are declared, owns also the dividends and it is immaterial when the dividends accrued, whether before or after the death of the testator, as the time the law fixes in adjusting the ownership of dividends is the time when the dividends were declared, and thus severed from the stock of which theretofore they are treated as incident, and if there was in this case a bequest of the bank stock, there would be no difficulty in agreeing with appellant in its contention. But as we have seen, there is no bequest of the bank stock in the will. The language employed by the testatrix in speaking of the stock is, "Which I desire shall be sold to the highest bidder and the proceeds of such sale divided," etc. Here we have no bequest of the stock but a bequest of the proceeds of the sale made by the executor and it is the law, as above stated, that a bequest of a specific sum to be paid from the stock itself does not bequeath the stock itself. It appears from this bequest the stock must remain the property of the estate until sold, hence the dividends having been declared when the stock was the property of the estate, the executor was right in turning them into the corpus of the estate.

But we are told by appellant that it is patent that as the will provides for the sale of the stock to the highest bidder and the proceeds of the sale to be paid to appellant and the Orphans' Home, it is plain the testatrix intended the sum should be made as large as possible for appellant and therefore the dividends are intended to be included and that we should heed this intention. There is no rule of construction better settled in the law nor more firmly imbedded in both reason and justice than that the intention of the testator is the polar star by which the court should be guided in the construction of wills. Our statute, sec. 4650, R. S. 1899, provides that, "All courts and others concerned in the execution of last

wills shall have due regard to the directions of the will and true intent and meaning of the testator in all matters brought before them." Our Supreme Court has said: "The first thing to be ascertained is what was meant by the testator in framing his will and if his meaning and intention are not violative of any rule of law, they must be carried out and executed." [Predell v. Collier, 40 Mo. 1. c. 321; Cross v. Hoch, 149 Mo. 336, 50 S. W. 786; Carr v. Dings, 58 Mo. 405; McMillan v. Farrow, 141 Mo. 55, 41 S. W. 890; Allison v. Chaney, 63 Mo. 282; Briant v. Garrison, 150 Mo. 656, 52 S. W. 361; Lewis v. Pittman, 101 Mo. 281, 14 S. W. 52; Garth v. Garth, 139 Mo. 456, 41 S. W. 238; Page on Wills, sec 461.] CHIEF JUSTICE MARSHALL once said: "The intent of the testator is the cardinal rule in the construction of wills and if that intent can be clearly conceived and is not contrary to some positive rule of law, it must prevail." [Finlay v. King, 3 Pet. U. S. 346.] A second rule is that the intention must be gathered from the terms of the will itself, unless the inconsistencies and ambiguities in the language used make the intention doubtful, in which case the situation of the testator, the objects of his bounty and all surrounding circumstances may be considered. In such cases the terms of the will should be viewed from the standpoint of the testator and his intention ascertained therefrom. [Hall v. Stephens, 65 Mo. 677; Garth v. Garth, 139 Mo. 463, 41 S. W. 238.] But this second rule of construction is to be revoked only when inconsistencies or ambiguites in the language used in the will render the intention of the testator doubtful; then it is proper to look to the surrounding circumstances in order to arrive at the true intent of the testator. [Garth v. Garth, 139 Mo. 456; McMillan v Farrow, 141 Mo. 55.]

It is well settled that the courts have no right to make a new will for the testator nor have they the right to say what the testator should have meant to do nor what words the testator meant to use, but the true pro-

vince of the court is to ascertain from the will what the
testator meant by the words he actually used. [Page on
Wills, sec. 460; Records v. Fields, 155 Mo. 321, 55 S. W.
1021.] And in the absence of manifest intent to the con-
trary, it is the plain duty of the court to give to the
words employed in the will their plain and usual sense
and arrive at a conclusion therefrom. [Records v.
Fields, 155 Mo. 321.] Under these rules the courts are
always careful to discover the intention of the testator
as expressed and enforce that intention. [Page on
Wills, sec. 460.]

Applying these rules, we find that the testatrix
knew how to make a specific bequest if she desired so to
do, as in other parts of the will she made several such
bequests, among which were a horse, carriage, buggy,
houses and lots, etc., to the residuary legatees and spec-
ifically provided that certain named amounts should be
paid to other legatees mentioned. We must conclude
then that she did not intend to make such bequest of the
stock in this instance, otherwise she would have done so,
as the language employed was not technical but plain
and simple, words which anyone competent to make
a will must understand. We must give to it its plain
and usual sense in interpreting its import. She said;
in speaking of the bank stock: "which I desire to be
sold to the highest bidder." This of itself is evidence
that she did not intend to give the stock to appellant as
the act of selling is the act which severs ownership. We
must understand that she intended that her estate should
own the stock until it was severed therefrom by the act
of sale which was directed. The estate, owning the
stock at the time dividends were declared, also owned
the dividends. It then provides "that the proceeds"
(The proceeds of what? Of "such sale," the will an-
swers,) "shall be divided into two equal parts which are
to be disposed of in the following manner." What is to
be disposed of in the following manner? "The proceeds
of such sale," again the will answers, and not the stock

or the dividends which were collected therefrom while the stock was still owned by the estate. Indeed, the words employed are so ordinary, such commonplace terms, so plain and so simple, that there is no cause here for the construction of the will under abstruse rules of law. It is a plain, every-day, simple matter of interpretation.

We gather the manifest intention of the testatrix, (by giving to the language employed by her its plain and usual sense) to be that she intended what she said: that the stock should be sold and the proceeds paid to appellant and the Orphans' Home. As was said by BURGESS, Judge, in McMillan v. Farrow, 141 Mo. 62: "The provisions of the will in this case are so plain that to resort to extrinsic evidence as to the situation of the parties and the circumstances surrounding the testator at the time of its execution is unnecessary in order to arrive at its true intent and meaning." And the learned judge might have added that resort to matters *aliunde* in such case would be wholly unauthorized by law. It was the plain direction of the good lady to the executor to sell the bank stock and pay over the proceeds of such sale to appellant and the Orphans' Home and this he rightfully did.

The judgment of the circuit court should be affirmed. It is so ordered. All concur.