In the Matter of the Estate of SUSAN HUEDNER, Deceased.

Surrogate's Court, Kings County, October 7, 1930.

*Byrne & Byrne*, for the petitioner.

*Duncan, Klupt & Bruchhausen*, for the claimant.

*D. Joseph De Andrea*, for the objectant.

WINGATE, S. The questions here presented concern the propriety of the allowance of two claims against this estate. There is insufficient personalty from which to pay them and the executor has petitioned for the sale of the realty in the event of their allowance.

The first is made by the physician who attended decedent in her last illness; the second by the husband who seeks to recover for work alleged to have been performed and moneys claimed to have been expended by him in alterations to the house and grounds, for mortgage interest and water rates on real property belonging to the decedent in her own right, which property was owned by her at the time of her marriage and was occupied by the family. The executor expressed his willingness to pay the claims, but rejected them as a result of the opposition of a devisee of the realty.

There is absolutely nothing in the record to justify the allowance of the claim of the physician as a proper charge against the estate. His testimony was merely that he prepared the bill for services to decedent and that in his opinion it was a reasonable one. It may well be that the services were rendered and that the recompense sought was proper, although the evidence adduced does not establish the facts; but even were that point conceded, it is clearly the obligation of a husband to pay the expenses of his wife's last illness in the absence of a special agreement that her personal estate is to be liable therefor. (*Matter of Shipman*, 1 Con. Sur. 256; revd., on other grounds, 53 Hun, 511; *Matter of Totten*, 137 App. Div. 273; *Thrall Hospital* v. *Caren*, 140 id. 171.)

The husband's direct claim aggregates $2,809.17; $826 of this sum is for work alleged to have been performed by the husband personally in painting, erecting a fence and doing brick and cement work on the premises; $8.05 is for the 1927 water tax; $108 is for mortgage interest on July 1, 1923, and January and July 1, 1924; and the balance is for sums alleged to have been paid by him to various artisans and materialmen for work done on and materials furnished to the premises between May 11, 1923, and November 19, 1927.

On the facts shown by the record, the items of this claim naturally divide themselves into three groups, namely, *first*, those for personal services by the husband of the decedent, aggregating $826; *second*, the claim for moneys alleged to have been paid (a) to J. C. Sapp on May 11, 1923, amounting to $257; (b) to L. Kallman's Sons on December 15, 1925, amounting to $100, and (c) to Ilseman & Battersby on December 11, 1924, in the sum of $256 and on November 19, 1927, in the sum of $227.85; and, *third*, the balance of the claims aggregating $1,142.32. These three classes will be considered in order.

In connection with the right of the husband to recover for his own work against the estate of his wife, " it is a fundamental principle of law that where one person renders, and another accepts, service, the law presumes a promise on the part of the

person benefited to pay for such service" (*Matter of Mason,* 134 Misc. 902, 904, and cases cited), but "where the relation of the parties is of such a character as repels the presumption of a promise to pay for service rendered, it will be presumed that the service was intended to be gratuitous." (*Matter of Hamilton,* 70 App. Div. 73, 76; affd., 172 N. Y. 652.) In the case at bar the work done by the husband was painting, building a fence and doing cement and brick work on the premises which he occupied, apparently free of cost, the house being his wife's separate property, owned by her prior to her marriage to him. He was as interested in the condition and convenience of the house as she, as it was his home. Had the house belonged to him, his acts would have been merely those of the ordinary citizen of moderate means and mechanical abilities who devotes certain time to its improvement for his comfort and convenience and that of his family. Should the fact that title to the house was in his wife change the nature of his act and place him, in his relations to his wife, in the position of an artisan expecting and demanding payment? To the court such a position is inconceivable, particularly on the facts here shown, that during this entire period the husband was relieved by the ownership of the wife of his legal obligation to furnish housing for the family. According to the proof of claim, the work dates back as far as November 16, 1925, more than three years prior to the wife's death, yet the record is barren of any showing of claim asserted or payment made on account, yet at all times up to her death she had more than sufficient funds in her personal savings account to have paid it in full. The final consideration which convinces the court that nothing can be allowed on these claims for personal service lies in the testimony of a son who was willing that the claim should be allowed. He testified that he had helped the husband in a part of the work. Upon being asked how much of it he had done, he replied: "I don't know. I was doing it for my mother. I didn't charge anything." From the entire record, the court feels that at the time the acts were done by the claimant his attitude respecting them was the same, as a result of which the language of the Court of Appeals in *Moore* v. *Moore* (3 Abb. Ct. App. Dec. 303, 312) becomes pertinent: "A person cannot perform services intending them to be gratuitous, and with a tacit understanding that no pecuniary charge is to be made, and afterwards recover * * * for such services."

Turning now to the claims of the second class, John Sapp, Samuel Kallman and Irving Battersby were called as witnesses and severally testified without contradiction that work was done or articles furnished upon the direct order of the decedent and that upon

their presentation of their bills to her she stated to them that her husband would pay them and that she would reimburse him, and that subsequently the claimant did so pay them. This testimony received some general support from the son (who was testifying against his own interest). He stated: " I know my mother said she was going to reimburse him and take care of him."

The amounts of the payments made by the claimant differ in certain instances from those set up in the proof of claim and where such differences occur the smaller sums must be taken since the claimant cannot receive more than he claims in any event nor more than it is proved that he paid on behalf of the decedent.

Mr. Sapp testified that he was paid $157 in the " fall " of 1923; Mr. Kallman stated his amount as $100 in December, 1925, and Mr. Battersby fixed his payments as $250 in December, 1925, and $250 in November, 1927. The two latter payments are stated in the proof of claim to have been $256 and $227.85 respectively. Since the precise dates were not proved, it must follow that the claimant is entitled to interest only from the last days of the respective periods. The recovery in this connection will, therefore, be $157, with interest from November 30, 1923; $350, with interest from December 31, 1925, and $227.85, with interest from November 30, 1927.

As to the third class of items, all that can be said is that the claims were for reimbursement of sums alleged to have been expended, and there is not a scintilla of evidence in the record that one cent was ever paid by the claimant on these accounts.

Since the claims here allowed, plus the unpaid portions of the funeral expenses and the attorneys' fees, considerably exceed the balance of ten dollars and ninety cents in the executor's hands, it is obvious that the real estate must be sold unless some adjustment in respect thereto can be made by the parties.

Proceed accordingly.