In the Matter of the Estate of ROSE EVELYN WILLIAMS, Also Known as R. EVELYN WILLIAMS, Deceased.

Surrogate's Court, Kings County, March 10, 1937.

*Frank D. Arthur* [*George W. Tucker* of counsel], for William H. Williams, as administrator, etc., accountant.

*Joseph T. Keller*, for the contestant Margaret W. Owen.

WINGATE, S. This extended and acrimonious litigation concerning an insignificant sum approximates the ultimate of futility.

The intestate was a married woman without children who, at the time of her death and for over ten years previously, had lived with her husband, who is the present accountant. With the exception of his mother-in-law, who was contingently entitled to some participation, depending on the size of the estate, he was the sole statutory distributee.

At the time of the death the gross assets of the estate, as valued in the estate tax proceeding, totaled $6,302.70. To this sum subsequently discovered personal belongings added a value of $69, giving a gross estate of $6,371.70. Three bank accounts, aggregating $2,761.74, passed to the husband pursuant to their terms, and formed no part of the estate.

In the tax proceeding, deductions totaling $1,345.37 were allowed, with the result that the net estate was apparently reduced below the $5,000 figure which passes in its entirety to the surviving spouse pursuant to subdivision 3 of section 83 of the Decedent Estate Law. On this demonstration the husband-administrator was advised that he might treat the net avails as his own, and did so. This course appeared the more reasonable owing to the fact that at the expiration of the usual seven months' administration period the market value of a participation certificate, which had been appraised at $1,000, had depreciated to $450.

The present controversy has been precipitated by reason of the discovery of the additional sixty-nine dollars worth of personal belongings four and a half years after the death, and of the fact that, included in the deductions upon which the valuation of the net estate was predicated, were included $326.30 for hospitalization and doctors' bills during the fatal illness of the decedent.

This insignificant basis for litigation has resulted in a compulsory accounting proceeding which was later consolidated with a voluntary one, and the filing of three sets of objections, the last containing twelve items of objections, and their trial before the court.

These objections appear to be fundamentally predicated on the basically erroneous theory that the pertinent section of the Statute of Distribution operates upon the estate at the time of distribution and not as of the date of death of the decedent. This, of course, is not so.

So far as presently pertinent, the statute reads: " The real property of a deceased person, male or female, not devised, shall descend, and the surplus of his or her personal property, after payment of debts and legacies * * * shall be distributed * * * in manner following: * * * 3. If the deceased leaves one

parent surviving, and no child or descendant, and a surviving spouse, the surviving spouse shall take five thousand dollars and one-half of the residue, and the surviving parent shall take the balance."

As was observed in *Matter of Killough* (148 Misc. 73, 86): " Law like nature abhors a vacuum. For this reason it is the prevalent conception that the rights of those succeeding to property upon a death attach immediately, with no intervening hiatus of ownership. (*Read* v. *Williams*, 125 N. Y. 560, 570; *Barber* v. *Terry*, 173 App. Div. 469, 471.) * * * The effects of the Statutes of Wills and of Descent are in substance the same. Instead of taking to itself the property of the deceased, the sovereign directs its distribution among persons ascertainable in accordance with its laws. These persons are, by these laws, vested with the ownership of the property from the moment of the death."

It is a principle of substantially universal application that a will speaks and is operative from the moment of death (*Brundage* v. *Brundage*, 60 N. Y. 544, 548; *Matter of Beckmann*, 158 Misc. 706, 710; *Matter of Larney*, 148 id. 871, 878; *Matter of Schrier*, 147 id. 539, 540; *Matter of Shevlin*, 143 id. 213, 217), and the same is true of devolution pursuant to the Statute of Distribution where intestacy occurs. In such a situation there is merely a substitution for the expressed testamentary desire of the statutory presumption of what the particular decedent would have directed had he voiced an expression of his wishes (*Matter of Weissman*, 137 Misc. 113, 116; affd. on opinion of this court, 232 App. Div. 698; *Matter of Smallman*, 141 Misc. 796, 798; *Matter of Shupack*, 158 id. 873, 877), with the result that devolution in intestacy is in reality a transmission of property pursuant to a statutory will, which, like one executed pursuant to section 21 of the Decedent Estate Law, determines the property passing as well as the identity of the recipients (*Clark* v. *Cammann*, 160 N. Y. 315, 329; *Doane* v. *Mercantile Trust Co.*, Id. 494, 499; *Matter of Storum*, 220 App. Div. 472, 476; *Matter of Terwilligar*, 135 Misc. 170, 187; affd. on opinion of this court, 230 App. Div. 763) as of the time of death.

It follows that in a determination under subdivision 3 of section 83 of the Decedent Estate Law as to the rights of the surviving spouse and a single surviving parent, the situation must be viewed as of the moment of death and the devolutionary rights of the parent determined by relation to that date.

In the case at bar the husband was entitled to the absolute statutory bequest of $5,000 in every event, provided the net assets of the estate equaled that sum, any net assets in excess of that amount being divisible equally between him and the decedent's

mother. The situation was, accordingly, substantially identical with that which would have existed if the decedent, instead of permitting the assets of her estate to devolve pursuant to a " statutory will," had expressly given a general legacy to the husband and bequeathed the remainder to the husband and mother in equal shares, the only material difference being that, whereas under a voluntary will the beneficial vesting of the gift would be postponed until the expiration of seven months after the issuance of letters (Dec. Est. Law, § 146; *Matter of Stulman*, 146 Misc. 861, 868), the gift under the " statutory will " vested beneficially immediately upon the death.

The amounts to which the beneficiaries under the " statutory will " are entitled, whereas incapable of ascertainment until the period of administration has been completed, are, nevertheless, when determined, referred back to the date of the death, from which time they are entitled to the incidents of ownership, including income, thereof.

In the present instance the gross estate, as noted, amounted to $6,371.70. Since the husband, in his individual capacity as such, was personally liable for the debts of his wife, the deductions permitted in the estate tax proceeding for the expenses of her last illness are not presently permissible offsets in computing the net distributable estate. (*Matter of Huedner*, 138 Misc. 101, 102.) Her funeral and administration expenses, however, are. (Surr. Ct. Act, §§ 216, 222; *Matter of Smallman*, 138 Misc. 889, 892.) In the present instance, since, objectant's contention to the contrary notwithstanding, there is no basis for a denial of commissions; the total permissible deductions amount to $1,017.72. It follows that, as of the date of death, when the rights of the distributees vested beneficially, the net estate amounted to $5,353.98. As of that date, the husband became the owner of $5,000 plus one-half of the balance of $353.98, or a total of $5,176.99, and the mother of $176.99.

It appears, however, that included in the gross assets of the estate was wearing apparel of the deceased valued at fifty dollars. This was turned over by the husband to the mother and accepted by her. She now insists that this property belonged to him individually by reason of the exemptions contained in section 200 of the Surrogate's Court Act. Undoubtedly he had a right to assert such a claim. Indeed, he might also have insisted upon receiving the $300 financial exemption provided by subdivision 4 of the same section. Had he made such assertion of right it would unquestionably have been validated, with the result that $350 would have been subtracted from the net estate, leaving its figure at $5,003.98, of which his mother-in-law would have been entitled to one dollar

and ninety-nine cents. He made no such assertion of right, however, and must accordingly be deemed to have waived it, with the result that the wearing apparel remained a part of the assets of the estate and, having been turned over to and accepted by the objectant, must be deemed a *pro tanto* satisfaction of her distributive rights, with the resultant reduction of the sum to which she is entitled to $126.99.

As events have transpired she was the beneficial owner of this sum from the date of death and is entitled to the proportion of the income received thereon by the estate from the date that such ownership accrued. Adopting the computations most favorable to her, this appears to have been at the rate of five and ninety-eight one-hundredths per cent. The period elapsing since the date of death is approximately four years and five months, giving a total of return of $33.51, which, when added to her net distributive share of $126.99, makes a grand total of $160.50, to which she is now entitled.

In view of all the circumstances of the case, the court, as a matter of discretion, will deny costs to the objectant.

Enter decree on notice in conformity herewith.