In the Matter of the Estate of JAMES HALE BATES, Deceased.

Surrogate's Court, Kings County, September 23, 1937.

*Morgan & Lockwood*, for the City Bank Farmers Trust Company, as trustee, etc., for Alice Bertha Del Grella, petitioner.

*Cullen & Dykman*, for The Brooklyn Hospital and the Brooklyn Home for Children, respondents.

*George B. Draper* and *Myer Miller*, for Lou A. Bates, respondent, as a distributee under residuary of will.

*Barr, Robbins & Palmer*, for Florence W. Griswold, as a distributee under residuary of will.

*Leonard N. Snedeker*, special guardian for infant legatee under residuary of will.

*Latson & Tamblyn*, for The Brooklyn Association for Improving the Conditions of the Poor.

*Gleason, McLanahan, Merritt & Ingraham*, for the Packer Collegiate Institute.

*Robert F. Greacen*, for The Brooklyn Home for Aged Men.

*Watson, Kristeller & Swift*, for the Plymouth Church of the Pilgrims.

*Wood, Molloy & France*, for The Congregational Home Missionary Society.

*Chase & Cahoone*, for the Long Island Historical Society.

*Francis H. Warland*, for The Cresent Athletic Club.

WINGATE, S. This testator died in November, 1901, leaving a will probated during the following month, by the terms of which, among others, he erected two trusts for the respective lives of his wife and daughter, granting them powers of testamentary appointment over portions of the principal. On the death of the first to die, a secondary trust of the reduced corpus was erected for the benefit of the survivor and, on the death of both, the remainders were directed to be paid, $5,000 to the Green-Wood Cemetery, and the balance, under the item numbered " twelfth " in varying

specified amounts to thirteen named charitable and educational institutions with a direction that if the available sum was less than the total given, the bequests should abate *pro rata*, whereas if it was in excess, they should be correspondingly increased.

Thereafter was inserted the item which is the subject-matter of the present controversy, and which reads as follows:

"*Fifteenth.* It is my purpose by this will to dispose of all my property real and personal. If it shall occur that the principal of the trust disposed of by the Twelfth Paragraph or as therein enumerated *exceed one half of my estate* (which I do not contemplate can be the case) then any excess above such one half to which such bequests are limited, and also any property as to which it might otherwise appear or be held I had died intestate, I wish and direct to be equally divided and go, one third to the next of kin of myself as if I had died intestate; one third to the next of kin of my wife as if she had died intestate; and one third to the next of kin of my daughter as if she had died intestate; such division into thirds by the classes named even though some persons may thereby receive more than others by reason of common kinship." (Italics not in original.)

Both of the life tenants have now died and the question propounded for determination is as to the meaning to be attributed to the italized words in the foregoing quotation.

Over date of May 22, 1903, the transfer tax appraiser filed his report fixing the value of the estate, and four days later Surrogate CHURCH signed the *pro forma* order of taxation on the basis of the figures therein contained. This was not appealed. The gross personal estate as thus determined was $646,632.82. In addition, the decedent owned two parcels of real estate, the one in Brooklyn and the other in Cavendish, Vt., the aggregate value of which was said to have been $50,000, giving a total gross estate of $696,632.82. From this, deductions were allowed of $9,736.48 for debts, $695.25 for funeral expenses, $6,583.25 for commissions and $5,559.41 for testamentary expenses, reducing the total estate to a net figure of $674,058.08. The principals of the trusts for the widow and daughter were each in the sum of $294,540.04.

At the time the trust estates came into being the widow had attained the age of fifty-seven years and the daughter was thirty-nine, and the then-existing values of their respective gifts were accordingly fixed by the Superintendent of Insurance of the State of New York in the manner then and still in vogue. The value of the life estate of the widow in the portion of the remainder constituting her trust was fixed at $143,000. The power of testamentary appointment over $150,000 of the principal which was granted to her was appraised

as having a then value of $72,754. The secondary life estate of the daughter in the principal as reduced by the power of appointment was appraised as having a then existing value of $34,868 which left a value of the remainder passing to the charitable remaindermen of $35,377.

The proper allocation of values of the gifts to the daughter were similarly appraised, with the result that at her attained age her interest in the trust was fixed at $202,249. She possessed a power of testamentary appointment over $75,000 of the principal which possessed a present value of $21,854, with the result that the value of the remainder gift to charity of this trust was valued as of the date of death of the testator at $63,057.

Adding together the values of the two remainders whose aggregate constituted the charitable gift now in question, it was found that their total, as of the date of death of the testator, amounted to $98,434, which was between fourteen and fifteen per cent of the total value of the entire net estate and a slightly smaller percentage of the gross estate less debts alone, which is the criterion by which a violation of section 17 of the Decedent Estate Law is tested. (*Matter of Seymour*, 239 N. Y. 259, 262, 263; *Matter of Brooklyn Trust Co.*, 179 App. Div. 262, 264; *Matter of Brown*, 135 Misc. 611, 613; *Matter of Sloat*, 141 id. 710, 712; *Matter of Miranda*, 151 id. 459, 462.)

The remainder gifts to the charities became absolutely vested at the date of death (*Warner* v. *Durant*, 76 N. Y. 133, 136; *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 580, 581; *Matter of Gurlitz*, 134 Misc. 160, 163; *Matter of Byles*, 157 id. 46, 48; *Matter of Sandgren*, 160 id. 784, 785), from which time the will spoke (*Brundage* v. *Brundage*, 60 N. Y. 544, 548; *Matter of Williams*, 162 Misc. 507, 509; *Matter of Beckman*, 158 id. 706, 710; *Matter of Shevlin*, 143 id. 213, 217). Their value is obviously determinable only as of the time when such gifts were made and are not to be increased by subsequent accretions thereto over an indefinite period of time. It is just as unreasonable to urge that the gifts to the charities taking effect in possession only after a generation and three-quarters of time are to be valued at the figure of their present face, as it would be to say that the outright gift of a $1,000 five per cent bond in 1901 was worth not merely the original $1,000 but this sum plus all of the interest which would be payable thereon during the intervening period on a total of upwards of $2,850. Were those who are contending for the application of such a rule in the present case to be subjected to taxation on their inheritances on any such basis, their vociferous protests would, metaphorically speaking,

be readily audible from one end of the State to the other without the aid of any of the usually conventional media of communication.

It is obvious from the foregoing that, when judged by the universally accepted criterion of expectancy in accordance with mortality tables, the value of the gift to the charities did not exceed one-half of the testator's estate, wherefore the specified condition precedent to any gift over failed of fulfillment.

Since the time of enjoyment of the remainder gifts has now actually arrived by reason of the death of the life tenants, it is possible to assess absolutely the value in 1901 of the remainder gifts then made, not on mere probability and expectancy but on actual occurrence. As events have transpired, the charities were given the sum of $589,080.08 less $6,270.80 commissions or a net sum of $582,809.28 payable at the end of thirty-six years. The brief of one of the charities conservatively observes that this gift, if actually of this sum as of the date of death, would have yielded in thirty-four years with interest at five per cent compounded semi-annually, a sum " well above $1,500,000." The actual figure is more than double this amount, namely, $3,061,189.37, demonstrating by the actual event that the gift as actually made by the will was not only not the $582,809.28 contended by the opponents of the charities nor even the $98,434 computed by the Superintendent on the basis of mortality tables, but actually an extremely small fraction of the latter sum. (Gleason & Otis, Inheritance Taxation [3d ed.], p. 281.)

Obviously the entire estate could not have exceeded the sum of all of its parts. To contend, therefore, that the gift which beneficially passed to the charities under the will of the decedent possessed a value of $582,809.28 would be to assert that the testator, who had unquestionably made gifts from his property worth $575,532.80, could still give this additional sum, or a grand total of $1,058,342.08 from the assets of an estate of only $674,058.08. This is plainly impossible. He did not have it to give. *Non dat qui non habet.* To attribute any such idea to the testator would result in a *reductio ad absurdum* of his usually clear and lucid testamentary script.

What he actually had in mind is wholly obvious, since the will gives every internal evidence of expert legal draftsmanship. He was aware of the inhibitions of section 17 of the Decedent Estate Law and knew that these prohibited the gift of more than one-half his estate to charity. He could not conceive that this could occur under the terms of his will as he expressly stated. As an abundance of caution, however, since he wished to preclude any possibility of intestacy, he provided that if the remainders of the trusts, which

alone were directed in the twelfth item, should " exceed one half of my estate " " to which such bequests are limited," obviously by the provisions of section 17, that " any excess above such one-half " should devolve in the manner specified.

The provisions of the will did not infringe the inhibitions of section 17. The value of the charitable remainders at the time of their gift, valued either on the basis of probable duration of life of the primary beneficiaries or on the basis of actual continuance as demonstrated by the event, were far less than one-half of the estate. The conditional defeasance consequently never became operative and the named charities are entitled to present payment in accordance with the wish and expressed direction of the testator.

Enter decree on notice in conformity herewith.