## RECORDS v. FIELDS, et al., Appellants.

### Division Two, March 20, 1900.

Will: CONSTRUCTION: HEIRS: CLASS: PER STIRPES AND PER CAPITA. A testator having no children, after making provision for the payment of debts, and devising certain property to his widow, disposed of the residue of his estate in these words: "The balance of my property and money I want equally divided between the heirs of W. and J., deceased." W. and J. were brothers of the testator, both deceased at the date of the will. Three children and four grandchildren of W., and two children of J., were living at the date of the will, and survived the testator. In an action by the executor for judicial construction of said clause, *held*, first, that the heirs of W. take one half, and the heirs of J. one half; second, that the children and grandchildren of W. share equally, each taking per capita one-seventh of one-half.

Appeal from Jackson Circuit Court.—*Hon. Edward L. Scarritt,* Judge.

REVERSED.

*Flournoy & Flournoy* for appellants, Christopher C. and W. W. Fields.

When property is given by a will to the "heirs" of certain designated persons, in such manner as to leave it doubtful as to whom, or in what proportions, the property should go, the persons who take and the portions taken, should be determined by the statute of distributions. Schouler on Wills, sec. 538; Dagget v. Slack, 8 Metc. 450; Balcom v. Haynes, 14 Allen 204; Rand v. Sanger, 115 Mass. 124; Boskins' Appeal, 3 Pa. 304; Hock's Estate, 154 Pa. St. 417; Ashburne's Estate, 159 Pa. St. 545; In Scott's Estate, 163 Pa. St. 165; Nutter v. Vickery, 64 Me. 491; Kelley v. Vergris, 112 Ill. 242; Thomas v. Miller, 161 Ill. 60; Henry v. Thomas, 118 Ind. 23; Hodges v. Phelps, 65 Vt. 308; Lyons v. Acker, 33 Conn. 224; Raymond v. Hillhouse, 45 Conn. 467; Conklin v. Davis, 63 Conn. 380; Healy v. Healy, 70 Conn. 467.

*John H. Crain* for appellants, Priscilla Turner and Taylor Fields.

(1) If F. R. Fields had died intestate, and there had been no nearer heirs than his nephews and neices, and their children, the children would have inherited of their parents, and would not have been permitted to divide equally with their uncles and aunts. Copenhaven v. Copenhaven, 78 Mo. 63; Barnum v. Barnum, 119 Mo. 63. It must be remembered that the testator will be held to have anticipated the condition of things at the date of his death. Redfield (4 Ed.), p. 380. That this is a bequest to classes is also shown by a consideration

of the essential characteristics of the class idea, which are: First, the equality of the proportion in which the objects of the gift are to take. Second, the uncertainty at the time of the gift as to the ultimate number of the objects or beneficiaries. Murphy on Remainders, 10, 11. (2) If the testator intended that his property should be equally divided, share and share alike, among the children of William and James Fields, he would have mentioned their names instead of mentioning them as two separate classes or two separate families. Obviously from the words of the will, the testator was thinking of his two brothers. (3) In this case the testator says he wants his property equally divided between the heirs of William Fields and James Fields, deceased, and aside from the ordinary and usual grammatical sense of the words "equally divided between," supporting our contention, the court will observe that the testator uses the word "heirs," instead of naming the nieces and nephews then living, which word, *ex vi termini*, implies representation; he intended that the representatives of his nearest of kin should be included in the two classes of families mentioned in the will. In re Asburner's Est. (Pa.), 28 Atl. Rep. 361. (4) It will be noticed that the devise is not directly to these children, as individuals, but this property is given, devised and divided between the heirs of the two deceased brothers, and to now say that the two classes of heirs referred to, shall, without regard to numbers, or the classification mentioned, receive this residuary estate, share and share alike, is to ignore and upset the apparent intention of the testator and all well-settled and general rules as applied to the usual and ordinary grammatical construction of our language. Johnson v. Bodine, 79 N. W. Rep. 348.

*John W. Clements* for respondents, Thomas L. Fields, Ollie Fields and Ernest Fields.

(1) The word heirs is a word of purchase, wherever a devise of an estate to heirs is not preceded by any prior estate

Records v. Fields.

of freehold, devised to their ancestors, which may be expanded into an estate of inheritance, by the estate left the heirs. When the heirs take by purchase they do not take as heirs but as a class of persons.   When the devise is to a class of persons who take in their own right the distribution should be made per capita.   Campbell v. Wiggins, 1 Rice 10; Vanorsdall v. Vandeventer, 51 Barbour 137; Bunner v. Storms, 1 Sandf. Ch. 362; Harris' Estate, 74 Pa. St. 452; Witmer v. Ebersale, 5 Pa. St. 458; Ingram v. Smith, 1 Head 411; Gold v. Judson, 21 Conn. 626; Freeman v. Knight, 2 Iredell's Eq. 72.   (2)   Where the words "heirs," "grand-children," etc., are used as words of description merely, the persons answering to the class description take per capita and not per stirpes, unless the devise be to the testator's own heirs. Bryant v. Scott, 1 Devereux & B. Eq. 155; Hobbs v. Crage, 1 Iredell's, Eq. 332; Cheeves v. Bell, 1 Jones Eq. 237; Harris v. Philpott, 5 Iredell's Eq. 238; Granby v. Sawyer, Phillip's Eq. 10; Tuttle v. Puitt, 68 N. C. 544; Ward v. Stowe, 2 Devereux's Eq. 509. (3) The fact that the testator directed an equal division or that the property and money be equally divided, etc., is inconsistent with the theory that the division should be made per stirpes.   Purcell v. Culbertson, 12 Bush. 370; Brown's Exrs. v. Brown, 6 Bush 649; Daggett v. Slack, 8 Metcalf 450; Wells v. Newton, 4 Bush 159; Walters v. Crutcher, 15 Mon. 2.   (4)   Where a gift is made by will to the heirs of two or more persons, or to one and the heirs of another, the distinction as to the proportion in which the parties will take, sometimes depends upon whether the ancestors be living or dead.   In the former case his heirs taking per stirpes in the latter per capita.   2 Jar. on Will (5 Amer. Ed.), 619; 2 Preston on Estates, pp. 21 to 26; 2 Redfield on Wills, p. 34.

GANTT, C. J.—This is an application by the executor of F. R. Fields to the circuit court of Jackson county to

construe the third clause of the last will and testament of
F. R. Fields, which is as follows:   "The balance of my prop-
erty and money, I want equally divided between the heirs
of William Fields and James Fields, deceased."

All of the heirs of William and James Fields having been
brought into court, the cause was heard upon the following
agreed statement of facts:

The testator F. R. Fields died in Jackson county, Mis-
souri, on March 6, 1896, and his will was duly probated in the
probate court of said county on March 12, 1896.   The plain-
tiff is the duly appointed and acting executor of said will.
William Fields and James Fields deceased mentioned in the
third clause of the will were brothers of the testator.   At the
date of the will and at the death of the testator, both William
Fields and James Fields were dead, and the legal representa-
tives of William Fields then were and now are his grand-
children, Thomas L. Fields, Ollie Fields, Earnest Fields and
Nannie Downing, and his children, Christopher C. Fields,
William W. Fields, and Mollie L. Meador, said Thomas L.
Fields, Ollie Fields and Earnest Fields being the children of a
deceased son of said William Fields, and said Nannie Down-
ing being the child of a deceased daughter of said William
Fields; and the legal representatives of said James Fields
then were and now are his children Priscilla Turner and Tay-
lor Fields.   The personal property bequeathed by the third
clause of the will amounts to about $12,000.

The will is in these words:

"I, F. R. Fields, of the county of Jackson and State of
Missouri, of sound and disposing memory, knowing the uncer-
tainty of life and that death must come to all, do declare this
to be my last will and testament.

"First.   I wish all my just debts and funeral expenses
paid.

"Second.   I give, devise and bequeath to my beloved
wife, Mary R. Fields, my home place containing 171 acres

[here follows a description of said home place]; also all horses, cattle and hogs that may be on hand at the time of my death, with all the household furniture of every description, with all the grain and provisions that may be on hand at the time of my death; also all farm implements, together with four thousand dollars in money.

"Third. The balance of my property and money I want equally divided between the heirs of William Fields and James Fields, deceased.

"Fourth. I appoint my beloved wife Mary R. Fields and Thomas W. Records executors of this my last will and testament."

Thereafter on the 3d day of April, 1897, the court by its decree construed said will to mean that the property given by the third clause of the same should be divided among the children and grandchildren of said William Fields and James Fields, deceased, per capita, each taking a one-ninth part.

Thereafter on said 4th day of April, 1897, defendant Christopher C. Fields and William W. Fields filed their motion for a new trial which said motion, omitting caption, is as follows:

"First. The judgment and decree of the court is against the law.

"Second. The judgment and decree of court is against the evidence.

"Third. The judgment and decree of the court is against the law and the evidence."

Thereafter on the 6th day of April, 1897, defendants Priscilla Turner and Taylor Fields, filed their motion for a new trial, which said motion omitting caption, is as follows:

"First. The findings of the court herein are contrary to the evidence and the law.

"Second. The judgment rendered herein is contrary to the law and the evidence.

"Third. The finding and judgment should have been as prayed for in the answer of these defendants."

Both of said motions were overruled, and exceptions taken at the time, and said defendants have appealed.

I. Appellants Priscilla Turner and Taylor Fields, the only heirs of James Fields, seek to have the will construed so as to divide said residue into two equal parts, one of which shall go to them as the heirs of their father, James Fields, and the other to the heirs of William Fields.

Appellants Christopher C. Fields and William W. Fields, contend that the proper construction of the will would direct the property to be divided into seven equal parts, one of which would go to each of the living children of William, and James Fields, one to the three grandsons of William in the right of their deceased father, and one to the granddaughter of William in the right of her deceased mother.

The grandchildren of William Fields, deceased, insist that the whole of said residue shall be divided into nine equal parts, one of which shall go to each child and grandchild of William and James Fields, deceased.

The only evidence adduced to aid us in the construction of the will is the fact that at the date of the execution of the will William Fields and James Fields were both dead; that they were brothers of said testator, and that the objects of his bounty, the children of his deceased brothers, the present defendants, were the same at the time of the execution of the will and at the date of his death. Upon these facts and the will itself, we must give our construction of the will.

"All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." [Section 8916, Revised Statutes 1889.] This but confirms the rule of construction long before adopted by the courts. The object of all construction is to reach the intention of the testator.

It is sometimes said that the court upon which the duty rests should endeavor to put itself in the place of the testator and his surroundings to ascertain the meaning of the words he used in his will.    [29 Am. and Eng. Ency. of Law (1 Ed.), 340, and cases cited.]    We may then properly consider that the testator F. R. Fields had no children of his own; that his two brothers James and William were dead, and each had left children surviving him, and William grandchildren.

The testator's words, as written, are to be understood and interpreted in their plain and usual sense, in the absence of a manifest intention to the contrary, but where a testator uses technical words he is presumed to use them in their technical sense, unless a clear intent to the contrary is apparent.    In this case the remainder of the will throws no light upon the intention of the testator in this third clause, and no evidence *aliunde* was offered to qualify or change the meaning of the ordinary words.

The words of the third paragraph of the will are: "The balance of my property and money I want equally divided between the heirs of William Fields and James Fields, deceased."

Now it is evident there were no joint heirs of William and James.    There were heirs of James, deceased, and there were heirs of William, deceased.    The meaning, then, of the clause on this point is that the property is to be equally divided between the heirs of James Fields, and the heirs of William Fields.    Whether we construe the word "heirs" in this clause as a technical word or as synonymous with children and grandchildren it will not solve the difficulties suggested by the astute counsel.    Back of this lies the crucial test, did or did not the testator intend to make two classes of these heirs or children?

What is, first, the ordinary and usual meaning of the words "between the heirs of James and the heirs of William?"    Unquestionably it conveys the thought of two parts, a distribution with reference to two parts, one part to heirs of

James, the other part to heirs of William. Not only is this the natural and ordinary meaning of the words, "equally divided between the heirs of William Fields and the heirs of James Fields," but this is also the true etymological significance of the word "between." [Webster's International Dictionary, "Between."]

The Century Dictionary says: "Between is literally applicable only to two objects; but it may be and commonly is used of more than two where they are spoken of distributively, or so that they can be thought of as divided into two parts or categories, or with reference to the action or being of each individually as compared with that of any other or all the others. When more than two objects are spoken of collectively or individually, among is the proper word."

Bouvier defines it: "Belonging to two as a mutual relation." While "between" is often incorrectly used for "among," there is nothing in this or the attendant circumstances tending to show that F. R. Fields, or the draughtsman of this will was an ignorant man and used this word "between" in any other than its correct sense, and certainly neither the context or the admitted relationship of the parties require us to give it an improper meaning instead of its correct significance. [In re Ihrie's Estate, 29 Atl. Rep. 750; Young's Appeal, 83 Pa. St. 59; Osburn's Appeal, 104 Pa. St. 637.]

Using the word, then, in its proper and correct sense, the phrase, "equally divided between the heirs of William Fields and James Fields deceased," should be construed as "equally divided into two parts, one, to the heirs of James Fields, and one, to the heirs of William Fields." [Preston v. Brant, 96 Mo. 552; In re Ihrie's Estate, 29 Atl. Rep. 750; Young's Appeal, 83 Pa. St. 59; Osburn's Appeal, 104 Pa. St. 637.] If the other words of the will showed that the testator used it as synonymous with "among," it might be held to indicate an intention to divide the residue among the children of both per capita. But as already said, the clause itself is all we have,

and there is no evidence that the testator did not use the word in its proper etymological sense. Nor are there any modifying words leading us to conclude that he used it in the sense of "among."

Putting ourselves in the place of the testator and considering that his affection would naturally give each brother's heirs an equal share of his estate, it seems to us that he intended to divide it into two equal shares, one to the heirs of James, the other to the heirs of William.

Let us look further for the intention of the testator. All of these children were living when this will was executed. If the testator intended that each child and grandchild of his two brothers should take an equal share of this residue, how natural it would have been for him to have named each of them and given each one-ninth of it, or have said, I bequeath the residue to them to be divided equally among them, but he did not devise it to be divided equally among certain persons, but between two families of children. [Preston v. Brant, 96 Mo. 552; In re Ihrie's Estate, 29 Atl. Rep. 750, and cases cited.]

We think it is apparent, by naming the two brothers he had in mind his duty to them. Had they been living and he had bequeathed it to his brothers William and James, and either or both had died prior to the death of the testator, then each set of children would have received that half which would have gone to their father or grandfather.

But as his brothers were both dead, and it was uncertain what children of either would be alive at the testator's death, he advisedly used the word heirs to indicate that whether few or many, whether near or remote, each brother's family would receive exactly the portion, which doubtless he would have given him had either or both been alive when he made the will.

Such a disposition would have been both natural and just, and if the language used will bear this construction, and there are no other words to indicate a clear purpose to do

differently, it ought to receive that construction. We are strengthened in this view because these children were not all equally near to him. Some were nieces and nephews, others grandnieces and grandnephews. If the construction is to prevail that all the heirs or their descendants, however remote, are to take per capita, it requires no stretch of imagination to conceive that one brother might have only one child, a nephew of the testator, and the other brother twenty or twenty-five grandchildren, and in such case, the nephew, the child of one brother, would receive one twenty-sixth only of the legacy, and the other brother's family receive twenty-five twenty-sixths of the whole, and the evident purpose of the testator would be thwarted.

The argument to the contrary is that where a gift is to a class each individual of that class takes per capita as if he were designated by name. This, however, is predicated on the proposition that there is such a class as the joint heirs of William and James Fields. There is, however, no such class designated in the will, nor is there such in fact now. There are two classes, the heirs of James Fields, deceased, and the heirs of William Fields, deceased, and between these two classes the legacy is directed to be divided, equally, that is, one-half to each. [Ross v. Kiger, 26 S. E. Rep. 193; 2 Jarman on Wills, Mar. p. 1051, par. 2, note 1; Walker v. Griffin's Heirs, 11 Wheaton 375.]

Having reached this conclusion as to the principal question there yet remains to be settled the division as among the heirs of William Fields deceased. If we are right in our conclusion that the words "equally divided between the heirs of James and William Fields," referred to the two classes of the said heirs, and not the individuals, then we have no words in the will directing how the respective heirs in each class shall take as among themselves.

Do the children of William Fields and his grandchildren, take equal shares of the moiety bequeathed to them? While they are designated by the word "heirs," it is clear they take

as purchasers directly from F. R. Fields. [Barnum v. Barnum, 119 Mo. 63.]

Their half of the residue is bequeathed to them as a class, and in such case the general rule is that they take per capita.

This is a bequest of personalty and the word heirs can have no effect as a word of limitation. Its sole purpose is to designate under a general term the persons whom the testator contemplated as his legatees. It points out in this case, the children and grandchildren of William Fields, all of them together constituting one class. As none of them take in a representative character but as purchasers, directly from their uncle and granduncle, it must be ruled in the absence of the slightest evidence showing a contrary intention, that they take per capita or each one-seventh of one-half of said residue mentioned in the third clause of said will.

As the circuit court reached a different conclusion as to the principal division between the two sets of heirs the judgment is reversed with directions to enter judgment in accordance with the views herein expressed. All concur.