FIRST TRUST COMPANY, and PETE HEDGPETH, Executors of the Will and Estate of WILLIS G. BRINSON, Deceased, Plaintiffs-Respondents, and PETE HEDGPETH, Plaintiff-Appellant, v. HARRY E. MYERS, PEARL SHAFFER, sometimes known as MRS. GEORGE SHAFFER, HARRIETT CRISWELL, sometimes known as MRS. CHARLES CRISWELL, MARVIN B. F. MYERS, Defendants-Respondents, and GORDON FRANK LYON, sometimes known as GORDON FRANK LYONS, DONALD JAMES LYON, sometimes known as DOLAND JAMES LYONS, WALLACE LEE LYON, sometimes known as WALLACE LEE LYONS, and FRANK M. BRINSON, Defendants-Appellants.—No. 37793.—174 S. W. (2d) 378.

Court en Banc, October 4, 1943.

900

*Ronald S. Reed,* Guardian ad litem for Donald Lyon, Gordon Lyon and Wallace Lyon, appellants.

*Chas. H. Mayer* for Pete Hedgpeth, plaintiff-appellant; Frank M. Brinson, defendant-appellant.

902

*W. M. Morton* for First Trust Company and Pete Hedgpeth, Executors of Will of Willis G. Brinson, plaintiffs-respondents.

*Groves & Watkins, Fred M. Wanger* and *O. W. Watkins, Jr.,* for Harry E. Myers, Pearl Shaffer, Harriett Criswell and Marvin B. F. Myers, respondents; *Thomas E. Atkinson* of counsel.

904

*Hal H. McHaney* and *Oliver & Oliver, amici curiae.*

*Elbert L. Ford* and *Langdon R. Jones, amici curiae.*

█ CYRUS CRANE, Special Judge.—This is a suit brought by the executors of the Estate of Willis G. Brinson, deceased, for construction of his will. For an understanding of the issues, the will is set out in full, as follows:

"This is my last will. I give, bequeath and devise to my legal heirs, who are as follows:

"My brother, Frank M. Brinson of St. Joseph, Missouri; my nephew Pete Hedgpeth of Rockport, Missouri; my niece, Mrs. Charles Criswell of Chickasha, Oklahoma; my niece, Mrs. Pearl Shaffer of St. Joseph, Missouri; my nephew, H. E. Myers of Bethlehem, Pennsylvania; my nephew, Marvin B. F. Myers of Wichita, Kansas; in complete and perfect ownership all my rights and property of every kind and nature, whether real or personal, wherever situated, appointing the First Trust Company of St. Joseph, Missouri, and Pete Hedgpeth of Rockport, Missouri, to serve without bond, executors of my estate, and giving them seisin thereof.

"My half brother, Leonard Lyon died in January, 1892, leaving a son, Frank Lyon, whom I have not heard of for many years. I have no knowledge as to whether he is living or dead. If my nephew, Frank Lyon, should be living, I bequeath to him the sum of Ten Dollars $10.00, to be paid out of my estate."

(Signature duly witnessed.)

The testator was a bachelor and was 72 years of age at the time of his death. We accept the statement of appellant which correctly named the heirs and their relationship to the testator, as follows:

"Willis G. Brinson's mother was married twice. Her first marriage was to James P. Lyon. Of this union two daughters and a son were born; they were, respectively, Mary E., who married one Myers; Emma, who married one Hedgpeth, and Leonard D. Lyon.

"After the death of James P. Lyon said mother married Frank M. Brinson, Sr. Of this union two sons were born, Willis G. Brinson and Frank M. Brinson.

"The father and mother and all of the children of the first marriage, the two half sisters and the half brother of the testator, died, each leaving issue, before the death of the testator, so that, at his death, his heirs were:

"1. A full brother, Frank M. Brinson.

"2. Two half nieces, Pearl Shaffer and Harriet Criswell, and two half nephews, Harry E. Myers and Marvin B. G. Myers, all children of Mary E. Myers and her only heirs.

"3. One half nephew, Pete Hedgpeth, the only surviving child and the sole heir of Emma Hedgpeth, and

"4. Three great half nephews, Gordon Frank Lyon, Donald James Lyon and Wallace Lee Lyon, all children of and the only heirs of Frank Lyon, who died October 10, 1938, and who was the son and only heir of Leonard D. Lyon (137). At the time of the trial the

ages of the three great half nephews were, respectively, 19 years, 18 years and 16 years.''

The issues on the trial were:

(1) What construction or interpretation is to be given to the words used in the will, ''to my legal heirs?'' Was the use of these words by the testator intended to invoke the statute of descents and distributions and thereby result in a distribution of the estate per stirpes, or were the words merely used as the designation of a class consisting of the individuals thereafter named and so result in a division per capita?

(2) Did appellant, Frank Brinson, the brother, as a collateral heir of the full blood, take a double share over an heir of the half blood? and

(3) Were the three minor children of Frank Lyon to take any part of the estate under the will?

The trial court ruled that the distribution should be per capita to the heirs named in the will, and that the three minor children of Frank Lyon should take nothing. Frank Brinson, full brother, and Pete Hedgpeth, a half-nephew and co-executor, appealed. An appeal was also taken by the minor children of Frank Lyon.

At the present time, there are a few well settled rules to be applied in the construction of wills, and these are so generally accepted that citation of authority is not needed to further establish them. The prime rule of construction is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it.

Certain concessions frankly made by counsel on both sides obviate the necessity of an exploration of the law and citing and distinguishing cases in regard to the use of the words ''to my legal heirs.'' It is conceded by respondent that ''If the testator's will had provided that all of his property should go to his legal heirs and *nothing more,* the presumption would have arisen that the testator intended that his property descend in accordance with the law of descents and distributions of the State of Missouri.'' This, of course, would mean a per stirpes division. On the other hand, counsel for appellant concedes that if the bequest had been made to certain named relatives then the division would have been per capita. So that the question squarely arises whether or not the whole framework of the will and the circumstances surrounding the testator at the time

the will was made require the Court to give no effect to the words "to my legal heirs." In other words, we are asked to hold that these words are not to be given their usual legal meaning but are to be treated merely as the designating term of a class. Some doubt as to the effect to be given these words may have been created by the uncertainty as to the draftsman of the will. In two of the opinions heretofore rendered by judges of this Court it is stated that the will was drawn by a layman. The record, however, is silent as to the draftsman of the will and we have no evidence before us as to who he was. Counsel for appellant makes the interesting suggestion that the draftsman followed the copy of the will of the late Chief Justice White of the United States Supreme Court, and counsel for respondent agree that this is probably true. The will of the late Chief Justice has been cited as a model of simplicity and brevity. The will here uses practically the same language in most of its structure. The White will devised the property "to my wife, Leita M. White." The present will uses the words "to my legal heirs." These words are not found anywhere in the White will. If the testator here had been literally following the White will he would have made his bequest to his "relatives," but instead he used the words "to my legal heirs." We have no right to assume that the testator or the draftsman of the will was ignorant of the legal meaning of the words used. If it be assumed that the testator himself drew the will we have no means of knowing whether he took the advice of counsel as to the meaning of those words which as we stated were a departure from the White will; for aught the record shows he may have done so. In any event, we are not warranted in ignoring these words or assuming that they were ignorantly used. In Wooley v. Hays et al., 285 Mo. 566, 226 S. W. 842, this Court said, speaking of these words when used in a will:

"Nor do the words 'lawful heirs' create any ambiguity, latent or otherwise. Those words are as certain in their meaning as any words in the English language can be."

It is urged, however, that because the testator made his devise "to my legal heirs" and then said who they were, as follows: (giving their names and addresses) and thereafter in the will evinced a purpose to cut off his half-nephew, Frank Lyon, with a mere nominal bequest, he used the words "legal heirs" as merely descriptive of the class among whom he intended that his estate be divided. We do not believe that this conclusion follows. If the testator after naming the beneficiaries as he did, had intended that they should share equally and had so stated, then, endeavoring to get at his true intent it would have been clear that he meant a per capita division. Wooley v. Hays, supra. Sometimes omissions can speak as loudly and positively as words themselves.

Considering the fact that the testator was a man who gave careful attention to his affairs, was particular and precise in the handling of

his finances, we think the omission of any such words as "equally" or "in equal shares" is highly significant. If these words had been used there would have been no question as to their meaning or the testator's intention.

Respondent asks why the testator if he merely desired to distribute his estate to his legal heirs, thereafter specifically named them? As disclosed by the context and general purport of the will there are several answers to this query.

(1) He desired to disinherit or make only a nominal bequest to Frank Lyon; so desiring he aids his purpose by naming those to whom his entire estate is to be distributed. This for certain emphasis of his disinheritance of Frank Lyon. See Rixey et al. v. Stuckey et al., 129 Mo. 377, 31 S. W. 770.

(2) He desired to distribute his estate only to his *known* heirs (this proposition will be amplified later on).

(3) For the reasons stated by Judge Clark in his first opinion prepared in this case, which was not adopted, but with which we agree in part, as follows:

The testator not only named his heirs (and correctly named them as of the date of the will), but he gave the residence address and kinship of each, except that he did not designate any of them but the father of Frank Lyon as being of the half blood. The residence addresses were no doubt given as an aid to the executors in locating and identifying the heirs. The degrees of kinship might also be of some value for purposes of identification, but the testator may well have thought that this information might be of some importance in determining the amount to be distributed to each heir.

So our conclusion is that this naming of the heirs does not militate against a per stirpes distribution.

This case is rather unique, in that while on the face of it the situation is simple, yet it has created a wide divergence of views as shown by the opinions which have heretofore been written and filed in the case. Counsel for all the parties in interest are to be commended for their diligence in research, their helpful briefs and the able arguments made at the hearing. Their arguments and briefs and the authorities cited by them have all been fully reviewed and considered. It has been repeatedly said by the courts that precedents are not of great value in will cases of this character. This is true because no two wills that have come under review by the courts are precisely alike either in their language or in the circumstances surrounding the testator at the time of making the will. So, in the present case, while the authorities cited and others have been reviewed and considered and used as "assistants," no case has been found on all fours with the one here under consideration. For that reason it has been thought unnecessary to burden this opinion with an attempted analysis of the various authorities cited or consulted. In an able and scholarly brief

respondent's counsel have raised many interesting questions. For instance, it is argued that neither Frank Lyon nor his sons (minor appellants) could be disinherited of an intestate share of the testator's estate unless the will effectively gave the property to other persons. We think, however, that the will clearly shows that this was exactly what the testator intended to do. Taking the whole scope and purpose of the will, it is as though the testator had said, "I give, devise and bequeath to my legal heirs (except Frank Lyon, for reasons herein-after mentioned) such *other* heirs are as follows:" No rule of law prevented the [382] testator from making such an exception. We think he meant to do it. Other interesting arguments are advanced, all of which have been fully considered but do not change our conclusions. They are, however, of sufficient strength and cogency to create doubt. As stated, this case has raised many doubts as shown by the different opinions. If it had been free from doubt the court ought not to have entertained the action, but under the circumstances was fully justified in so doing. In doubtful cases like this the courts seeking firm ground have said that the statutes of descents and distributions furnish "a safe guide." Such statutes announce public policy and are generally accepted as being fair and just. That "safe guide" can and should be followed in this case because no positive provision of the will prevents it, but on the contrary the language used by the testator invites it.

In Lyon v. Ackers, 33 Conn. 222-3, an extensively quoted case, it was said:

"The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intentions are in doubt, the statute is a safe guide."

This language is approved in the great opinion written by Judge Cardozo in New York Life Insurance Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431. In that case will be found the reasons (with a wealth of authority) for the adoption of this rule, as well as the effect of the words "legal heirs" when used in a will. This case can be consulted profitably by those interested in similar situations. Judge Cardozo announced that the words "legal heirs" or "legal next of kin" take their "color and connotation" from the schedule of the statute (of descents and distributions). He also said that:

"In the absence of clear tokens of a contrary intention, the statute is to be taken as the standard of division."

We think the rule thus announcing the statute as a "safe guide" is of almost universal acceptance and should be adopted and followed. By so doing a distribution in this case should be made per stirpes.

Records v. Fields, 155 Mo. 314, 55 S. W. 1021, cited by respondent, clearly runs counter to the great weight of authority and should no longer be followed.

Because of the legitimate doubts which may be entertained as to the testator's intention from the will itself, it is proper that the

Court should consider the circumstances surrounding the testator at the time of making the will to ascertain whether the conclusions heretofore reached and the presumptions indulged are supported or overthrown. In other words, the Court, placing itself in the position of the testator, endeavors to ascertain the disposition that he would naturally make of his property under the circumstances.

The record shows that the testator was in some respects a rather unusual character. When ten years of age he and his brother Frank, who was three years his junior, sold newspapers and even at that early age were partners. He later became a telegraph operator and conducted an office of the Postal Telegraph Company in Beatrice, Nebraska. Then he was manager of the St. Joseph office of that company and was there joined by his brother Frank. They continued in that line of work for a number of years. Before they were of age they purchased real estate, which was taken in their father's name because they were minors. Throughout their entire business career these brothers were partners in all their enterprises and on the dissolution of such partnership made an equal division. The testator was never married. His one close tie was his brother Frank. In 1915 he retired from business while Frank continued in the coal business. After his retirement he spent practically all of his time in his brother Frank's office. This brother received an injury in 1925 resulting in his becoming crippled. At all times the testator evinced the greatest interest in his brother's condition, both financial and physical. Aside from this brother, he was closer to his nephew, Pete Hedgpeth than any of his other relatives. His relations with his other relatives were pleasant enough but not close. He showed an interest in their affairs and appreciated any attention they gave him. As counsel puts it, his relations with them were "casual"and this probably expresses the situation correctly.

As pointed out in his will, his half-nephew, Frank Lyon, had not been heard from for many years. In other words, Frank Lyon had paid no attention to his uncle who was unaware whether he was living or dead. Testator shortly prior to his death learned of the fatal accident to Frank Lyon, but prior to his death he did not know whether Frank Lyon had, or had not, children.

Testator was a man of thrift and prudence. Starting as a newsboy he left an estate which in the Probate Court was appraised at $73,493.43.

Such, in brief, is the picture which the record gives of the testator. From it we are forced to believe that our conclusions heretofore reached are correct. A per stirpes division of course gives Frank M. Brinson a larger share in the estate than any other heir. This, however, seems entirely in accord with what testator would naturally desire to do, inasmuch as he had neither wife nor children. Not often is there found an instance of such close union as existed between

these brothers. The record shows nothing occurred prior to testator's death to mar or interfere with that relationship. Testator's accumulations were made largely while in partnership with his brother. His concern for his brother's welfare, particularly in view of his invalidism, would naturally lead him to the division of the estate which we think the will calls for.

In this connection, Division Two of this Court in the very recent case of Gannett v. Shepley, 351 Mo. 286, 172 S. W. (2d), p. 857, said:

"One of the most telling circumstances in determining an intended beneficiary, when there is some doubt about it, is the relationship of the testator to the beneficiary. Settle v. Shafer, 229 Mo. 561, 129 S. W. 897; Cox v. Jones, 229 Mo. 53, 129 S. W. 495."

Logically, the same rule should apply when there is doubt as to the amount of the estate going to a beneficiary.

As we have heretofore said, courts have no right to make wills or to attempt to do what they think is equitable or fair when construing them. Nevertheless, when confronted with doubtful cases like this they should consider the testator's circumstances and endeavor to keep within the orbit of human experience and have regard to those ties of affection which normally influence human action.

Finally, we come to the question of whether or not the minor appellants, that is, the children of Frank Lyon, are entitled to take anything as heirs. When all of the circumstances are considered; the fact that the testator desired to cut off Frank Lyon for the reasons stated in the will, the fact that he did not know anything about Frank Lyon's children, taken with the entire context of the will, leads to the conclusion that the testator desired distribution of his estate only to his *known* heirs. This proposition has been well stated by Judge Douglas in his opinion in this case, and we adopt that portion of it as follows:

It is apparent that the testator believed it necessary expressly to mention his collateral heirs as in the case of a testator's children. Yet he intended only his known and familiar heirs to take under his will, not all of his possible heirs. In making the general bequest he named all his known heirs. Then he made an exception. He cut off the one he had lost touch with. The will recites: "My half brother, Leonard Lyon, died in January, 1892, leaving a son Frank Lyon, whom I have not heard of for many years. I have no knowledge as to whether he is living or dead. If my nephew, Frank Lyon should be living, I bequeath to him the sum of Ten Dollars $10.00, to be paid out of my estate." The evidence shows that the testator had not heard from Frank Lyon for a number of years. He did not even know if Frank Lyon was living. He had no knowledge of Frank Lyon's marriage. He did not know that Frank Lyon had children. His evident intention was to exclude the Frank Lyon branch of the family. This may well have been the impelling reason for the will. Giving effect

to the testator's use of the term "legal heirs" and following the purport and scheme of the will we find the testator intended his estate to go to his heirs but only to those heirs who were known or familiar to him as identified in his will.

The three children of Frank Lyon contend that the will directs the estate to be distributed to all the heirs. Accordingly they claim a share as such on the theory that the bequest of $10 to their father died with him under the terms of the will. The bequest was payable only "if my nephew, Frank Lyon, should be living." They concede that if the bequest had been unconditional, then under the anti-lapse statute (Sec. 528, R. S. 1939) they would have taken the ten dollars and no more. Their argument cannot stand in face of our finding that the will intended the estate to go to the known heirs only. The judgment of the trial court that the three children of Frank Lyon are not entitled to take under the will is proper.

On this branch of the case we have been furnished able briefs evincing extensive research by amici curiae. Their interest, however, is not so much in this case as in another piece of litigation of importance where they are seeking a construction of Section 526, R. S. Mo. 1939, relating to intestacy as to children not named in a will. This statute, however, so clearly by its language refers to lineal descents and not collaterals that we think it has no application to the present case. Our ruling, therefore is not to be taken as an attempted construction of that statute.

The conclusions reached result in a reversal and remanding of the cause with directions that a decree and judgment be entered ordering distribution per stirpes to the named beneficiaries in the will with the exception of Frank Lyon. Judgment to be in accord with the statutes of descent and distribution, Sec. 306 et seq., R. S. Mo. 1939, as qualified by Sec. 309. Under these statutes the distribution to Frank M. Brinson is a double share, the others taking in accordance with the provisions of the statutes and the children of Frank Lyon to take nothing. The judgment of the Circuit Court is reversed and the cause remanded with directions as above stated. *Tipton, J.,* and *Ellison, C. J.,* concur in opinions of *Douglas, J.,* and *Crane, Sp. J.;* *Douglas, J.,* concurs in opinion of *Crane, Sp. J.;* *Clark, J.,* concurs in opinions of *Douglas, J.,* and *Crane, Sp. J.,* in part and dissents in part, in separate opinion; *Hyde, J.,* dissents in separate opinion in which *Leedy, J.,* concurs; *Gantt J.,* absent.

DOUGLAS, J.—This is a suit to construe the will of Willis G. Brinson brought by his executors. The will is as follows:

"This is my last will. I give, bequeath and devise to my legal heirs, who are as follows:

"My brother, Frank M. Brinson of St. Joseph, Missouri; my nephew Pete Hedgpeth of Rockport, Missouri; my niece, Mrs. Charles Criswell

of Chickasha, Oklahoma; my niece, Mrs. Pearl Shaffer of St. Joseph, Missouri; my nephew, H. E. Myers of Bethlehem, Pennsylvania; my nephew, Marvin B. F. Myers of Wichita, Kansas; in complete and perfect ownership all my rights and property of every kind and nature, whether real or personal, wherever situated, appointing the First Trust Company of St. Joseph, Missouri, and Pete Hedgpeth of Rockport, Missouri, to serve without bond, executors of my estate, and giving them seisin thereof.

"My half brother, Leonard Lyon died in January 1892, leaving a son, Frank Lyon, whom I have not heard of for many years. I have no knowledge as to whether he is living or dead. If my nephew, Frank Lyon should be living, I bequeath to him the sum of Ten Dollars $10.00, to be paid out of my estate."

The testator died at the age of 72. He was a bachelor. The testator's mother had been twice married. The nieces and nephews mentioned in the will are by children of her first marriage so are in fact half nieces and half nephews of the testator. The testator and his brother, Frank M. Brinson, were born of the second marriage and were related by the full blood.

The testator and his brother had always been close. From boyhood they had worked together. They had been partners in business. Shortly after the partnership was dissolved the testator retired from business but made his brother's office his headquarters. The testator was also close to Pete Hedgpeth, his half nephew, who was named co-executor. He had kept in touch with his half nieces and nephews mentioned in the will with the exception of Frank Lyon. Frank Lyon had not been seen or heard of by the testator for some thirty-five years. Shortly before the testator's death word was received that Frank Lyon was coming to St. Joseph to visit but he and his wife were killed in an automobile accident while en route. They left three children who were not known to the testator. The testator left no heirs other than Frank Lyon's three children and those persons named in the will.

The issues raised on the trial were: (1) did those taking under the will take per stirpes or per capita; (2) did Frank Brinson, the brother, being a collateral [385] heir of the full blood, take a double share over an heir of the half blood; and (3) did the three children of Frank Lyon take under the will?

The trial court held that the estate should be distributed per capita to those named in the will and the three children of Frank Lyon should take nothing. Frank Brinson and Pete Hedgpeth have appealed. The three children of Frank Lyon have also appealed.

If the will had merely stated: "I give, bequeath and devise to my legal heirs . . . in complete and perfect ownership all my rights and property of every kind and nature . . . ", the questions raised would be of simple solution. The generally recognized

rule of construction is that a gift to "heirs", whether it be the testator's heirs or to the heirs of a third person, in the absence of any expression showing a contrary intention designates not only the persons who are to take but also the manner and proportions in which they are to take, all of which is determined by the statutes of descents and distributions. Anno. 16 A. L. R. 33. This rule is followed in this State. Wooley v. Hays, 285 Mo. 566, 226 S. W. 842. And see Preston v. Brant, 96 Mo. 552 (overruled on other grounds). Accordingly, if such was the will in this case, distribution would be per stirpes.

Records v. Fields, 155 Mo. 314, 55 S. W. 1021, is not pertinent here. In this case the will gives property "of every kind and nature, whether real or personal." The distribution between "heirs" in that decision was per capita because of the fact the bequest was personalty. Furthermore, that decision is contrary to the present rule. Page on Wills, sec. 1078. It should no longer be followed.

On the other hand, if the will had left out the words "my legal heirs who are as follows" and had simply said: "I give, bequeath and devise to . . . my brother Frank M. Brinson . . . " and so on, listing the others by name, then the applicable doctrine would require distribution per capita. It is settled that where a bequest is made to several persons by name in general terms, the individuals will take the same share or per capita. If that was the case here, distribution would then be per capita.

In the argument for a per capita distribution, we are urged to follow the latter doctrine. To do so we would have to disregard entirely the words "my legal heirs, who are as follows" and hold that the testator intended his estate to go to the named persons individually. But we regard the statement in the will giving the estate "to my legal heirs" as the disposing one.

It might be argued that since the will was drawn by a layman the term "legal heirs" was not used in its strict legal sense. Where wills are drawn by unskilled persons the term heir is often used in a vague and inaccurate sense. Even so, the term heir, like other legal terms, when unexplained and uncontrolled by the context of the will, should be given its well-settled legal meaning. Still, the purport and scheme of the will as an entirety must be kept in view. Giving effect to the intention of the testator demands this. "We mean, of course, his intention as expressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test." Chater v. Carter, 238 U. S. 572. "The primary meaning of 'heirs' is the meaning which should be given to it when employed in a will in the absence of anything in the will or in the surrounding circumstances to suggest a different meaning." Page on Wills, sec. 1009; Irvine v. Ross, 339 Mo. 692, 98 S. W. (2d) 763.

There is nothing in the will before us to indicate that the term "legal heirs" was used in any way except in its usual sense unless

we find it in the subsequent listing of the heirs by name. In other words, does the naming of the individual heirs indicate that the term "legal heirs" was used in some other than its usual sense? We say it was not because the will itself shows that the naming of the heirs was for the purpose of identification, viz: "to my legal heirs, *who are as follows*:" Furthermore, the testator did not intend to include all his heirs, as we will point out.

We conclude that the testator did not intend by the additional naming of his heirs that they should take equal shares as individuals. Giving effect to the testator's use of the term "legal heirs" (may not some significance attach to the use of "legal"?) in its well-settled meaning we hold that distribution per stirpes was intended.

Fully realizing the doubtful value of other will construction cases as precedents, [386] we find a somewhat similar provision in Holloway v. Burke, 336 Mo. 380, 79 S. W. (2d) 104. In that case the will gave the residue of the estate "to my full brothers and sisters, to wit: Ashby Wood, Benjamin Wood, Dyott Wood, Mary E. Runion and Sarah P. Burke, and their heirs . . . " This court construed this provision as a gift to a class overruling the contention that it was a gift to those named taking as individuals. In Rixey v. Stuckey, 129 Mo. 377, 31 S. W. 770, the will left the residue to "the children of my wife's nephew, Edward T. Jones of Virginia, one share . . . and the children of my sister, Achsah Settle, Joseph D. Settle, Jesse P. Settle, Charles Settle, Betty Styne; and Lucy Stuckey, children of my sister Achsah Settle, . . . " Interpreting this provision, this court held that the bequest was not made to the named children as individuals. We note that in neither of these cases was there any discussion about the naming of the individuals in addition to designating them as a class. For such discussion see Swallow v. Swallow, 166 Mass. 241, 44 N. E. 132; Hoppock v. Rucker, 59 N. Y. 202; Page v. Gilbert, 32 Hun (N. Y.) 301; Strauss v. Strauss, 363 Ill. 442, 2 N. E. (2d) 699, 105 A. L. R. 1386; Walker v. First Trust & Sav. Bank, 12 Fed. (2d) 896. The latter case is exhaustively annotated in 75 A. L. R. 773. At page 806 the annotator says: "But the fact that the members of the class are also mentioned by name is not conclusive; and, in general, the enumeration of beneficiaries is disregarded where it appears to be subordinate to the general description."

There is nothing else in the will itself nor do we find any evidence of surrounding circumstances which would indicate that a per capita distribution was intended. The testator's intention as to the manner of distribution must be deduced either from his use of the term "legal heirs" or from the fact he also mentioned the heirs individually by name; per stirpes from the former, per capita from the latter. As we have already indicated, it is our judgment that the former outweighs the latter.

The fact that the known heirs are identified by name in the will so that recourse to the statutes of descents and distributions is not necessary for their determination should not bar us from resorting to such statutes to determine the manner of distribution. Take an opposite case. Suppose the will had left the estate ''to my legal heirs, each heir to share equally'' without naming the heirs. Could it be successfully argued that because it was necessary to resort to the statutes to determine the heirs that the statutes must also govern as to the manner of distribution in the face of a contrary expression in the will? We think not.

However, if there is any doubt about the testator's intention regarding the manner of distribution, as the opposing contentions indicate, then there is another rule which we think apposite. That is, whenever the testator's intention is in doubt, the statutes furnish a safe guide. Lyon v. Acker, 33 Conn. 222. Judge CARDOZO, discussing whether an estate left to the ''next of kin'' should be distributed per stirpes or per capita approved this rule. ''We think a gift 'to heirs' or 'next of kin' is the same in meaning and effect as to 'legal heirs' or 'legal next of kin', and that one as much as the other, imports a reference to the statute.'' He went on to say that ''the words 'heirs' and 'next of kin' take their color and connotation from the schedule of the statute.''

''The rule thus emerges,'' he announced, ''that in the absence of clear tokens of a contrary intention, the statute is to be taken as the standard of division. (Allen v. Boardman, 193 Mass. 284.) The acceptance of this formula supplies a test of simple application. A testator is still free, if he pleases, to direct division on other lines. Often it will happen that he has no intention one way or the other. At such times, a division according to the statute is more likely than any other to correspond with what he would have wished if the subject were one that he had thought about at all. 'The Statute of Distribution governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide.' (Lyon v. Acker, 33 Conn. 222, 223.)''

This rule is supported by the weight of authority. Anno. 16 A. L. R. 17. We approve and adopt it. For this additional reason, distribution under this will should be per stirpes.

It is apparent that the testator believed it necessary expressly to mention his collateral heirs as in the case of a testator's children. Yet he intended only his known [387] and familiar heirs to take under his will, not all of his possible heirs. In making the general bequest he named all his known heirs. Then he made an exception. He cut off the one he had lost touch with. The will recites: ''My half brother, Leonard Lyon, died in January, 1892, leaving a son, Frank Lyon, whom I have not heard of for many years. I have no knowledge as to whether he is living or dead. If my nephew, Frank Lyon should be

living, I bequeath to him the sum of Ten Dollars $10.00, to be paid out of my estate." The evidence shows that the testator had not heard from Fank Lyon for a number of years. He did not even know if Frank Lyon was living. He had no knowledge of Frank Lyon's marriage. He did not know that Frank Lyon had children. His evident intention was to exclude the Frank Lyon branch of the family. This may well have been the impelling reason for the will. Giving effect to the testator's use of the term "legal heirs" and following the purport and scheme of the will we find the testator intended his estate to go to his heirs but only to those heirs who were known or familiar to him as identified in his will.

The three children of Frank Lyon contend that the will directs the estate to be distributed to all the heirs. Accordingly, they claim a share as such on the theory that the bequest of $10 to their father died with him under the terms of the will. The bequest was payable only "if my nephew, Frank Lyon, should be living." They concede that if the bequest had been unconditional, then under the anti-lapse statute (Sec. 528, R. S. 1939) they would have taken the ten dollars and no more. Their argument cannot stand in face of our finding that the will intended the estate to go to the known heirs only. The judgment of the trial court that the three children of Frank Lyon are not entitled to take under the will is proper.

In view of the conclusion we have reached, a new judgment must be entered construing the will as requiring distribution per stirpes to those named in the will (with the exception of Frank Lyon) in conformity with our statutes of descents and distributions. Sec. 306 et seq., R. S. 1939. These statutes are qualified by Sec. 309, R. S. 1939, which provides that collaterals of the half blood shall take only half as much as those of the whole blood. Therefore, Frank M. Brinson takes a double share. The children of Frank Lyon, as we have pointed out, take nothing.

Accordingly, the judgment should be reversed and the cause remanded with directions to proceed accordingly. *Ellison, C. J.,* and *Tipton, J.,* concur; *Clark, J.,* concurs in part and dissents in part.

### DISSENTING OPINION.

CLARK, J.—I agree with much that is said in the well written opinions of DOUGLAS, Judge, and CRANE, Special Judge, but I do not concur in that part of them in reference to the minor children of Frank Lyon and the conclusion that they are not entitled to share in the estate.

From the wording and arrangement of the will, I think the testator intended to give his property to his legal heirs, and to give it to them because they were his heirs; that is, with the exception of Frank Lyon, he intended each to take in accordance with the statutes of descent and distribution. It seems that the testator believed that

each heir would take under the law unless he expressly provided otherwise, and therefore he limited the share of Frank Lyon, if living, to a nominal amount.

The devise to Frank Lyon was conditioned on his surviving the testator. As he predeceased the testator, this devise became void. This is apparently conceded by all the parties.

The only reason given in the will for excluding Frank Lyon from a substantial share was that testator had not heard from him for many years, and did not know whether or not he was living. A very short time before his death, testator learned that Frank Lyon had died after the will was executed but he never learned that he had left surviving children. It is not clear that testator harbored any ill will toward Frank Lyon, but, even though we may think he did, we are not authorized to believe that he also disliked his unknown children. From the fact that he desired to disinherit Frank Lyon, it does not logically follow that he also wished to disinherit his children of whose existence he was unaware.

If I am right in my view that the dominant intent of the testator, as expressed in the will, was to give his property to his legal heirs, then these minors are entitled to share although not named in the will and although the testator did not know they existed.

"The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication. This rule of construction, however, is one which applies only in doubtful cases, for the will of the testator, if expressed in clear and unambiguous language, must prevail, even though it disinherits the heirs. A necessary implication is one which results from so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed. In the absence of plain words in the will to the contrary, the presumption is that the testator intended that his property should go in the legal channel of descent, and if it is uncertain and doubtful whether the testator intended to devise real estate, the title of the heir must prevail. There is no presumption from the fact that he made a will that the testator meant its construction to be at all possible points inconsistent with the statute of distribution. Instead the law favors that construction of a will which conforms most nearly to the general law of inheritance." [R. C. L., sec. 190, pp. 229, 230.]

My view is that the testator intended to devise and bequeath his estate to all his legal heirs, (except Frank Lyon) in the proportions indicated by our statutes of descents and distribution. Even if his intent is left in some doubt, this solution will more nearly accord with justice than any other.

"The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intentions are in doubt, the statute is a safe guide." [New York Life Ins. & Tr. Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431.]

My view is that the decree of the trial court should be reversed and the cause remanded with directions to enter a decree construing the will to require distribution among the heirs of deceased, including the children of Frank Lyon, in accordance with the statutes of descents and distribution.

### DISSENTING OPINION.

HYDE, J.—I cannot agree with the constuction of the will of Willis G. Brinson made in the opinion by CRANE, Special Judge. I think there are only two possible constructions of this will, on legal principles, and that this opinion makes neither.

■ It is disclosed that the form used for this will was the brief will of former Chief Justice WHITE of the U. S. Supreme Court, which has frequently been printed in legal periodicals. (We have italicised the words which appear in both wills.) The will of Chief Justice WHITE is as follows:

"*This is my last will. I give, bequeath and devise to my* wife, Leita M. White, *in complete and perfect ownership, all my rights and property of every kind and nature, whether real, personal* or mixed, *wherever situated, appointing* her executrix *of my estate without bond and giving* her *seisin thereof.*"

The will in this case is as follows:

"*This is my last will. I give, bequeath and devise to my* legal heirs, who are as follows:

"My brother, Frank M. Brinson of St. Joseph, Missouri; my nephew, Pete Hedgpeth of Rockport, Missouri; my niece, Mrs. Charles Criswell of Chicasha, Oklahoma; my niece, Mrs. Pearl Shaffer of St. Joseph, Missouri; my nephew, H. E. Myers of Bethlehem, Pennsylvania, my nephew, Marvin B. F. Myers of Wichita, Kansas; *in complete and perfect ownership, all my rights and property of every kind and nature, whether real or personal, wherever situated, appointing* The First Trust Company of St. Joseph, Missouri, and Pete Hedgpeth of Rockport, Missouri, to serve *without bond,* executors *of my estate, and giving* them *seisin thereof.*

"My half brother, Leonard Lyon died in January, 1892, leaving a son, Frank Lyon, whom I have not heard of for many years. I have no knowledge as to whether he is living or dead. If my nephew, Frank Lyon should be living, I bequeath to him the sum of Ten Dollars ($10,00), to be paid out of my estate."

Where Chief Justice WHITE put in the name of his sole devisee "my wife, Leita M. White", the testator here put in "my legal heirs, who are as follows", and then [389] stated the names, addresses and

relationship to him of six persons, making no distinction as to whole and half blood in stating this relationship. The testator also added a paragraph to state that his half nephew, Frank Lyon should, if living, receive $10.00, but made no mention as to what his descendants, if any, should receive if he were dead.

It is and must be conceded:

First: If the will had said only "devise to my legal heirs," leaving out the names thereafter set out, then the persons who would take under this will would be those on whom the law casts the inheritance on the ancestor's decease in case of intestacy. [See Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947.] In the present case, these would have been the persons designated in the dissenting opinion of CLARK, J., heretofore filed, per stirpes, just as if there had been no will.

Second: If the will had left out the words "to my legal heirs, who are as follows," and stated only the names as set out in the second paragraph, then those named persons would have taken equally, per capita.

Therefore, I think that it must be considered *either* that the words "to my legal heirs" are the real disposing words, so that the estate must be distributed completely according to the laws of descents and distributions; *or* that they are only descriptive words so that the devise was only to the named persons as designated devisees and not as heirs. The opinion, now filed herein, is part one way and part the other. It considers that the words "to my legal heirs" are the real disposing words of the will, and applies them as such to the persons specifically named; but it does not so apply them to Frank Lyon's children, who certainly are legal heirs of the testator and are not excluded by any provision. If the words "to my legal heirs" are disposing and not descriptive words, I do not see how any legal heirs, not specifically excluded, could be left out of the distribution. If the children of Frank Lyon take at all, they would take not as heirs of Frank Lyon (from what was left to him) but as heirs of the testator; but this opinion says that the words "to my legal heirs" should be given their legal technical meaning and then holds that they are not to be so applied to persons who are clearly within such meaning.

However, considering the will as a whole, it does seem to me *much more* reasonable to believe that the testator did not use the words "my legal heirs" in any technical sense or even that he knew their technical meaning. If he had, he could not have used them as he did. If he had actually meant "legal heirs" technically, there was no reason whatever for setting out the names of any persons. In fact, it would be a complete contradiction to do so, because, if they were technically used, the persons who would be his legal heirs could not have been named by him when he was still living. No one can name his heirs in his lifetime for the simple reason that "a man does not

have heirs . . . until he dies." [Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977, l. c. 984.] The way the testator did use these words could have meant nothing more than "heirs apparent" (relatives who might be his heirs if they outlived him) ; and surely a devise to such specifically named heirs apparent is not a devise to the testator's legal heirs, because some of them might not be his heirs and it is possible that none of them would be. Moreover, he clearly demonstrated that he did not mean a devise merely to those who would be his legal heirs because he expressly provided that the son of his half brother should be excluded.

I think the "true intent and meaning of the testator" which the statute (Section 568, R. S. 1939) requires us to ascertain and follow is : that when the testator added to the words "devise to my legal heirs" the words "who are as follows" and stated the names of six persons, he did not and could not have meant to leave his property to any persons who would eventually be his legal heirs but meant instead to leave it to the six relatives specifically named by him. In other words, he used the word "heirs" in the sense of relatives or kin as descriptive words and not as disposing words. That is, he used them exactly as Chief Justice WHITE used the word "wife" in the same place in the will. Clearly, therefore, he meant "devise to my following named relatives," or "devise to the following named persons who are my kin." I think he also meant equally, per capita; first, because in stating their relationship to him he made no distinction between whole and half blood, a distinction he certainly had in mind because he described Frank Lyon as a son of a half [390] brother; and second, because he said he gave it to them "in complete and perfect ownership," which seems to me to carry the implication of equality, to-wit : Complete and perfect ownership in each and in all of the six named without a suggestion of distinction between them. In short, just as Chief Justice WHITE used them to vest complete title in one person. It also seems significant to me that he did show that one and only one named person, Frank Lyon, was to be on a different basis from the rest. That is, Frank Lyon was to get only "Ten Dollars" instead of "complete and perfect ownership" with the others in all of the testator's property.

I think the decree of the trial court should be affirmed. *Leedy, J.*, concurs.